Jay T. Jambeck (SBN 226018)
LEIGH LAW GROUP, P.C.
582 Market Street, Suite 905
San Francisco, California 94104
Telephone: (415) 399-9155
Facsimile: (415) 795-3733
Email: jjambeck@leighlawgroup.com

Attorneys for Plaintiff
WEIJING TANG

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WEIJING TANG,<br><br>Plaintiff,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant. | Case No. ____________________<br><br>**COMPLAINT FOR:**<br><br>1. National Origin Discrimination (42 U.S.C. § 2000e-2(a));<br>2. National Origin Harassment (42 U.S.C. § 2000e-2(a)); and<br>3. Retaliation (42 U.S.C. § 2000e-3(a))<br><br>**DEMAND FOR JURY TRIAL**<br><br>Related Case: No. 3:25-cv-04568-RFL |

Plaintiff Weijing Tang ("Plaintiff" or "Ms. Tang") alleges as follows against Defendant The Regents of the University of California (the "University" or "Defendant"):

**INTRODUCTION**

1. Ms. Tang is a citizen of the People's Republic of China and a former doctoral student in the Molecular and Cell Biology ("MCB") program at the University of California, Berkeley ("UC Berkeley"). From August 2022 until September 29, 2025, she was also an employee of the University, holding paid appointments as a Graduate Student Instructor ("GSI") and a Graduate Student Researcher ("GSR").

2. This action concerns the University's treatment of Ms. Tang as an employee. Over more than two years, the same MCB decision-makers revoked her teaching appointment, blocked the laboratory placements on which GSR employment depended, refused teaching arrangements

that would have made a placement possible, terminated her GSR appointment on a pretextual immigration ground the University later admitted was wrong, and — after she complained of national origin discrimination to the University and to the U.S. Department of Education — dismissed her from the program and terminated all of her employment without a hearing. Similarly situated domestic, non-Chinese students were not treated this way.

3. Ms. Tang brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), for national origin discrimination, national origin harassment, and retaliation, and seeks reinstatement, back pay, front pay, compensatory damages, and attorneys' fees.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3), because Plaintiff's claims arise under Title VII.

5. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b), because the unlawful employment practices alleged here were committed in this District, the employment records relevant to those practices are maintained and administered in this District, and Plaintiff would have continued working in this District but for those practices.

6. Under Civil Local Rule 3-2(c) and (d), this action is properly assigned to the San Francisco or Oakland Division because a substantial part of the events giving rise to the claims occurred in Alameda County, where UC Berkeley is located, and in the City and County of San Francisco.

**PARTIES**

7. Plaintiff Weijing Tang is an individual residing in San Francisco, California. She is of Chinese national origin. At all relevant times through September 29, 2025, she was an employee of the University within the meaning of 42 U.S.C. § 2000e(f).

8. Defendant The Regents of the University of California is a corporation established under Article IX, section 9 of the California Constitution that operates the University of California, including UC Berkeley and the University of California, San Francisco ("UCSF"). The University

employs more than 500 employees and is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

## ADMINISTRATIVE EXHAUSTION

9. On September 26, 2025, Plaintiff submitted two inquiries to the U.S. Equal Employment Opportunity Commission ("EEOC"), Nos. 555-2025-02658 and 555-2025-02659, alleging national origin discrimination and retaliation by the University. Unable to schedule an intake interview, Plaintiff submitted the same information again, and on October 1, 2025, the EEOC docketed her charge as EEOC Charge No. 555-2026-00003. The charge was later amended.

10. On September 27, 2025, Plaintiff submitted a complaint to the California Civil Rights Department ("CRD"), CRD No. 202509-31440427. On July 14, 2026, that complaint was corrected and filed as an employment complaint against the University, CRD Case No. 202606-35945930, which was dual-filed with the EEOC as EEOC Charge No. 37A-2026-02454.

11. On July 15, 2026, the CRD issued Plaintiff a Notice of Case Closure and Right to Sue.

12. On July 24, 2026, the U.S. Department of Justice, Civil Rights Division, issued Plaintiff a Notice of Right to Sue Within 90 Days on EEOC Charge No. 555-2026-00003 (DOJ No. 809092-PJF). A true and correct copy of that notice is attached as Exhibit A.

13. On September 9, 2026, the U.S. Department of Justice, Civil Rights Division, issued Plaintiff a Notice of Right to Sue Within 90 Days on EEOC Charge No. 37A-2026-02454 (DOJ No. 833366-PBW). A true and correct copy of that notice is attached as Exhibit B.

14. This action is filed within 90 days of Plaintiff's receipt of each notice. Plaintiff has exhausted her administrative remedies, and the claims alleged here are like or reasonably related to the allegations of her charges.

## RELATED ACTION

15. Plaintiff is the plaintiff in *Tang v. The Regents of the University of California*, No. 3:25-cv-04568-RFL (N.D. Cal.) (the "Title VI Action"), which asserts a claim under Title VI of the Civil Rights Act of 1964 arising from Plaintiff's treatment as a student. The Title VII claims asserted here could not have been brought in the Title VI Action before the Department of Justice

issued its notices of right to sue, both of which issued after the deadline to amend the pleadings in that action. Plaintiff files this action to preserve those claims within the statutory period and will promptly move to relate this action to the Title VI Action under Civil Local Rule 3-12 and to consolidate the two actions or otherwise coordinate them as the Court directs.

## FACTUAL ALLEGATIONS

### A. Ms. Tang's Admission and Employment

16. Ms. Tang was admitted to the MCB doctoral program as a Sponsored Direct Admit student in February 2022, with a written guarantee of support — including stipend, tuition, fees, and health insurance — for the duration of the program. She began the program in August 2022.

17. As an international student in F-1 status, Ms. Tang could support herself only through University employment. In MCB, doctoral students are supported principally through two kinds of University employment: GSR appointments, funded by a faculty Principal Investigator ("PI"), and GSI appointments, funded from instructional budgets. GSR and GSI positions are academic student employee positions represented by UAW Local 4811 and paid through the University's payroll system.

18. In MCB, a thesis laboratory placement is a prerequisite for GSR employment. MCB also requires every doctoral student to serve as a GSI for two semesters, and the department itself decides which of its students are assigned to teach. MCB thus controlled both routes to Ms. Tang's employment.

19. When Ms. Tang's sponsoring PI relocated, MCB required her to find a new thesis laboratory. From that point forward, the University treated her differently than similarly situated domestic, non-Chinese students, as set out below.

### B. The University Closes Each Route to Employment (2023–2024)

20. On May 30, 2023, the University appointed Ms. Tang to a GSI position for the Fall 2023 term at a monthly salary of $2,500. On August 16, 2023, before the term began, the University revoked the appointment on the stated ground that she was "between lab placements." A GSI appointment is a teaching appointment that does not depend on a laboratory placement, and

the University has identified no policy that made being between placements a disqualification from teaching.

21. In or around June 2023, Ms. Tang reported hostile treatment to her then-laboratory manager and later to the department administration.

22. In or around September 2023, after two months, the University terminated Ms. Tang's funding without explanation. A similarly situated domestic, non-Chinese student in the same circumstances did not have his funding terminated. Fee remissions posted to Ms. Tang's account in September 2023 were reversed in March 2024, when the University retroactively charged her approximately $13,683 in Fall 2023 tuition and Nonresident Supplemental Tuition ("NRST").

23. On October 27, 2023, MCB placed Ms. Tang on academic probation for lack of a laboratory placement, despite her GPA of 3.71. A similarly situated domestic, non-Chinese student in an identical arrangement was not placed on probation. MCB's stated justification for the probation changed four times.

24. In December 2023, MCB's Head Graduate Advisor assigned Ms. Tang a lower grade than a domestic, non-Chinese student in the same research course under identical conditions. The University's own ad hoc committee later found that one of Ms. Tang's rotation PIs never responded and the other never submitted a grade; the domestic student has confirmed that the Head Graduate Advisor assigned his grade herself. That grade, covering 12 units, lowered Ms. Tang's GPA from 3.71 to approximately 3.4. It was never corrected.

25. Ms. Tang pursued laboratory placements that would have led to GSR employment, and MCB obstructed them. When Ms. Tang sought the Head Graduate Advisor's help after a verbal offer from one laboratory was withdrawn, the Head Graduate Advisor made disparaging remarks about her, including about her language skills, and suggested she transfer to another university. MCB told prospective PIs who were willing to take Ms. Tang that they would be responsible for her NRST — making her prohibitively expensive compared with a domestic student doing the same work — and imposed non-negotiable probation conditions on her alone.

26. On December 4, 2023, MCB's Graduate Student Affairs Officer told Ms. Tang, in substance, that the department had enough funding but did not want to provide it to her.

27. In December 2023, a faculty member who was prepared to take Ms. Tang into his laboratory proposed that she serve as a GSI for a year, which would have made the placement possible. MCB rejected the proposal and told him he would have to pay her NRST. In a February 9, 2024 email, MCB characterized the proposed GSI appointment as a way to "subsidize the research of the mentor." The faculty member declined to take Ms. Tang after that.

28. In or around Spring 2024, Ms. Tang withdrew for health reasons caused by these conditions. Under University policy, she was entitled to two months of pay and health insurance following a medical withdrawal; she received neither. The University conditioned her return on a probationary status she did not accept and appealed throughout.

29. In Fall 2024, Ms. Tang obtained a GSI appointment in the Department of Bioengineering. On August 16, 2024, the University removed her from it for alleged non-enrollment. The non-enrollment was caused by MCB's own delay in processing her readmission, which was not completed until September 26, 2024 — one day before her visa was set to expire.

30. Ms. Tang received no pay from in or around September 2023 until late October 2024.

**C. Ms. Tang Complains of Discrimination**

31. In or around March and April 2024, Ms. Tang reported national origin discrimination to the University's Labor Relations office, which acknowledged her report on April 3, 2024, and, through a representative of the University's Student Advocate's Office, to the University's Office for the Prevention of Harassment and Discrimination ("OPHD").

32. In or around May 2024, Ms. Tang's union, UAW Local 4811, filed grievances on her behalf, Nos. GRV-BR-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 and GRV-BR-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, alleging discrimination and violations of the collective bargaining agreement's Respectful Work Environment provisions.

33. In or around July 2024, a letter signed by approximately 220 members of MCB and related departments was submitted to the department chairs. The letter stated that Ms. Tang had experienced a hostile environment and retaliation, that the Head Graduate Advisor had made

discriminatory remarks and had assigned her an arbitrarily lower grade than a domestic student in an identical position, and that her probation was retaliatory.

**D. The University Terminates Ms. Tang's GSR Appointment**

34. In October 2024, Ms. Tang secured a placement in a UCSF laboratory and a GSR appointment beginning October 28, 2024. The University processed the appointment late and incorrectly.

35. In or around March 2025, Ms. Tang's union intervened with the University regarding her fee remission. Instead of correcting the problem, on March 14, 2025, MCB rewrote the condition of Ms. Tang's probation. Among other things, the rewritten condition listed NRST among the financial obligations a prospective faculty mentor would have to assume — reimposing the same barrier MCB had used to block her placements in 2023 and 2024. That rewritten laboratory-placement condition was later cited as the basis for her dismissal.

36. On or about March 17, 2025, Ms. Tang's union filed a grievance regarding her fee remission.

37. Three days later, on or about March 20, 2025, the University terminated Ms. Tang's GSR appointment on the ground that she had violated her F-1 status by failing to obtain Curricular Practical Training ("CPT") authorization. CPT authorization is not required for a GSR appointment. The University had misclassified Ms. Tang's appointment, placing her alone under a requirement that does not apply to GSR positions, never informed her of the requirement, and then used her failure to meet it to terminate her employment. The University later acknowledged that the CPT requirement was unnecessary but refused to correct the termination.

38. Ms. Tang's union filed a second grievance alleging that the termination violated the collective bargaining agreement's non-discrimination, discipline and dismissal, appointment security, and immigration provisions.

**E. The University Retaliates After Ms. Tang's OCR Complaints**

39. In or around April and May 2025, Ms. Tang filed complaints with the U.S. Department of Education's Office for Civil Rights ("OCR") alleging national origin discrimination, including in her funding and appointments, and notified the University. Within

hours of that notice, the University rejected her pending program-transfer application, which had been under review for weeks.

40. In Spring 2025, the University refused to permit Ms. Tang the standard laboratory rotations that would have allowed prospective PIs to evaluate her, causing further placement opportunities to collapse.

41. On or about June 26, 2025, Ms. Tang secured a written co-mentorship offer from two UCSF professors, which would have provided the laboratory placement on which GSR employment depended.

42. Four days later, on or about June 30, 2025, the Head Graduate Advisor — whom Ms. Tang had asked to recuse herself — recommended Ms. Tang's dismissal for failing to secure a laboratory. The Head Graduate Advisor then blocked the UCSF placement by citing an unwritten policy that the University has never produced and that is contradicted by Ms. Tang's own prior UCSF placement in October 2024.

43. During the same period, the University twice rewrote the "satisfactory performance" standard applied to Ms. Tang, each time to a version more adverse to her after she demonstrated compliance with the prior version; applied a "one lab transfer maximum" rule that appeared for the first time when her PI's relocation required her to transfer; and twice refused to apply to her a policy provision protecting Sponsored Direct Admit students. These rules were not applied to similarly situated domestic, non-Chinese students.

44. On or about July 17, 2025, the University denied Ms. Tang's appeal. The University later denied her funding and enrollment support for Fall 2025.

### F. The University Dismisses Ms. Tang and Terminates All of Her Employment Without a Hearing

45. On or about September 11, 2025, Ms. Tang asked that her appeal hearing be scheduled around medical appointments in early October 2025 for a health condition. The University denied the request.

46. On or about September 29, 2025, without a hearing, the University dismissed Ms. Tang from the MCB program and terminated all of her employment. The University's stated reason

was that she had failed to secure a thesis laboratory by its deadline — a failure caused by the University's own blocking of the UCSF co-mentorship placement she had secured.

47. The adverse actions described above were carried out largely by the same MCB decision-makers and continued without interruption from 2023 through Ms. Tang's termination in September 2025. In each instance the applicable rule changed in one direction only — against Ms. Tang — and was not applied to similarly situated domestic, non-Chinese students.

**G. Ms. Tang's Damages**

48. As a direct and proximate result of the University's conduct, Ms. Tang has lost wages and benefits, including GSI and GSR salary, fee and tuition remission, and health insurance; has incurred tuition, NRST, and other charges and costs, including costs of maintaining her F-1 status; has suffered harm to her immigration status, career, and earning capacity; and has suffered emotional distress, all in amounts to be proven at trial.

## FIRST CLAIM FOR RELIEF

### National Origin Discrimination — 42 U.S.C. § 2000e-2(a)

49. Plaintiff incorporates the preceding paragraphs.

50. Plaintiff is of Chinese national origin and was qualified for the GSI and GSR positions she held and sought.

51. The University subjected Plaintiff to adverse employment actions, including terminating her GSR appointment on or about March 20, 2025; obstructing her laboratory placements and the GSR employment that depended on them, including by blocking her UCSF co-mentorship placement in June 2025; denying her funding and appointments for Fall 2025; and terminating all of her employment on September 29, 2025.

52. The University treated similarly situated employees outside Plaintiff's protected class more favorably, and its stated reasons for its actions are pretextual. Plaintiff's national origin was a motivating factor in each of these actions. 42 U.S.C. § 2000e-2(m).

53. Earlier discriminatory acts described above, including those before the 300-day charge-filing period, are relevant background evidence of the University's discriminatory intent.

54. As a result, Plaintiff has suffered the damages described above.

**SECOND CLAIM FOR RELIEF**

**National Origin Harassment — 42 U.S.C. § 2000e-2(a)**

55. Plaintiff incorporates the preceding paragraphs.

56. From 2023 through September 29, 2025, the University subjected Plaintiff to unwelcome conduct because of her national origin, including disparaging remarks about her language skills, suggestions that she leave the University, statements that the department did not want to provide her funding, discriminatory grading, shifting and invented rules applied to her alone, and the repeated revocation, obstruction, and termination of her appointments.

57. This conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment, and a reasonable person in Plaintiff's position would have found it so. The conduct was committed by Plaintiff's supervisors and by University administrators with authority over her employment, and culminated in tangible employment actions, including the termination of her employment.

58. At least one act contributing to the hostile work environment occurred within the 300-day charge-filing period, and the entire course of conduct is therefore actionable.

59. As a result, Plaintiff has suffered the damages described above.

**THIRD CLAIM FOR RELIEF**

**Retaliation — 42 U.S.C. § 2000e-3(a)**

60. Plaintiff incorporates the preceding paragraphs.

61. Plaintiff engaged in protected activity, including by reporting national origin discrimination to Labor Relations and OPHD in 2024; through the May 2024 union grievances alleging discrimination and the July 2024 letter submitted to the department chairs; by filing complaints of national origin discrimination with OCR in April and May 2025 concerning, among other things, her funding and appointments.

62. The University took materially adverse actions against Plaintiff because of that protected activity, including rejecting her program-transfer application within hours of learning of her OCR complaints; recommending her dismissal and blocking her UCSF placement in June

2025; denying her funding for Fall 2025; and dismissing her and terminating all of her employment, without a hearing, on September 29, 2025.

63. The close timing between Plaintiff's protected activity and the University's adverse actions, the shifting and unsupported reasons the University gave for those actions, and the involvement of the same decision-makers establish a causal connection.

64. As a result, Plaintiff has suffered the damages described above.

**PRAYER FOR RELIEF**

Plaintiff requests that the Court enter judgment in her favor and against the University and award:

1. Restoration of her enrollment and academic standing in the MCB doctoral program, removal of the September 29, 2025 dismissal and all related notations from her academic and employment records, and such further relief as is necessary to restore her to the position she would have occupied absent the unlawful conduct;

2. Reinstatement to her GSI and GSR employment and restoration of her eligibility for those appointments;

3. An injunction requiring the University to provide her a thesis laboratory placement, with department-funded GSR support, on terms no less favorable than those afforded similarly situated students, and prohibiting the University from further interfering with her placement;

4. An injunction requiring the University to correct its employment, payroll, academic, and immigration-related records concerning her and to refrain from further discrimination and retaliation;

5. A declaration that the University's conduct violated Title VII;

6. Back pay and lost benefits, with prejudgment interest, and front pay to the extent reinstatement to her employment is not feasible;

7. Compensatory damages, including for emotional distress, under 42 U.S.C. § 1981a(a)(1), in an amount to be proven at trial;

8. Reasonable attorneys' fees, expert fees, and costs under 42 U.S.C. § 2000e-5(k); and

9. Such other relief as the Court deems just and proper.

DATED: October 22, 2026

LEIGH LAW GROUP, P.C.

/s/ /Jay T. Jambeck

Jay T. Jambeck
Attorneys for Plaintiff
WEIJING TANG

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

DATED: October 22, 2026

LEIGH LAW GROUP, P.C.

/s/ Jay T. Jambeck

Jay T. Jambeck
Attorneys for Plaintiff
WEIJING TANG